Joseph J. Siprut (admitted *Pro Hac Vice*)
*jsiprut@siprut.com*
Aleksandra M. S. Vold (admitted *Pro Hac Vice*)
*avold@siprut.com*
**SIPRUT PC**
17 N. State Street, Suite 1600
Chicago, Illinois 60602
312.236.0000
Fax: 312.948.9196

Todd C. Atkins
*tatkins@siprut.com*
**SIPRUT PC**
701 B Street, Suite 1170
San Diego, CA 92101
Phone: 619.255.2380
Fax: 619.231.4984

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| JORDAN LAMB, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No.  3:11-cv-05583-EDL |
| v. | Magistrate Judge Laporte |
| BITECH, INC., d/b/a Performance Bicycle Shop, a Delaware Corporation, | **PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| Defendant. | **Hearing Date: June 11, 2013** <br> **Time: 9:00 a.m.** <br> **Courtroom E – 15th Floor** |

# **TABLE OF CONTENTS**

I.      NOTICE OF MOTION ..........................................................................................1

II.     INTRODUCTION ...............................................................................................1

III.    PROCEDURAL HISTORY...................................................................................2

IV.     THE PROPOSED SETTLEMENT ......................................................................3

    A.  Certification of the Proposed Settlement Class ........................................3
    B.  Merchandise Vouchers..............................................................................3
    C.  Performance Compliance with California Civil Code Section 1747.08 and Notice to
        Customers ...................................................................................................3
    D.  Class Notice ...............................................................................................4
    E.  Incentive Award to Class Representative ..................................................5
    F.  Attorneys' Fees and Costs .........................................................................5

V.      THE PROPOSED SETTLEMENT IS FAIR AND SHOULD RECEIVE PRELIMINARY
     APPROVAL .........................................................................................................6

    A.  The Proposed Settlement Meets All criteria Establishing Fairness .................5
        1.  Strength of the Case  ...........................................................................7
        2.  Risk, Expense & Complexity of Case ...............................................9
        3.  Extent of Discovery...........................................................................10
        4.  Amount of Recovery .........................................................................10
        5.  Experience of Counsel ......................................................................11
        6.  Presence of Governmental Participants.............................................12

VI.     THE PROVISIONAL SETTLEMENT CLASS SHOULD BE CERTIFIED; THE FORM
     AND   METHOD   OF   NOTICE   TO   THE   CLASS   MEMBERS   SHOULD   BE
     APPROVED;  AND,  A  HEARING  REGARDING  FINAL  APPROVAL  OF  THE
     SETTLEMENT SHOULD BE SCHEDULED.......................................................12

    A.  The Provisional Settlement Class Should be Certified ...............................12
        1.  Numerosity — Federal Rule of Civil Procedure 23(a) .........................12
        2.  Commonality/Predominance — Federal Rule of Civil Procedure 23(a)(2) and
            23(b)(3) .............................................................................................13
        3.  Typicality— Federal Rule of Civil Procedure 23(a)(3).......................14
        4.  Adequacy of Representation— Federal Rule of Civil Procedure 23(a)(4)...........14
        5.  Superiority — Federal Rule of Civil Procedure 23(b)(3) ......................15

    B.  The Form & Method of Service of Class Notice Should Be Approved ............16

    C.  The Settlement is In Line with Other Class Action Settlements .......................18

1

2

D.  The agreement to comply with Section 1747.08 and notification of ability to opt-out hold value ..................................................................................................................19

E.  The Court Should Schedule a Hearing for Final Settlement Approval ............................20

IV. CONCLUSION .....................................................................................................................20

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

## <u>TABLE OF AUTHORITIES</u>

**UNITED STATES SUPREME COURT CASES**

3

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974).................................................................................................17

4

*Protective Comm. For Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
5   390 U.S. 414 (1968)..................................................................................................6

6   **UNITED STATES CIRCUIT COURT OF APPEALS CASES**

7   *Ace Heating & Plumbing Co. v. Crane Co.*,
8   453 F.2d 30 (3d Cir. 1971) ......................................................................................16

9   *City of Detroit v. Grinnell Corporation*,
10   495 F.2d 448 (2d Cir. 1974) ..................................................................................7, 9

*Class Plaintiffs v. City of Seattle*,
11   955 F.2d 1268 (9th Cir. 1992) .................................................................................6

12   *Franks v. Kroger Co.*,
13   649 F.2d 1216 (6th Cir. 1981) ...............................................................................17

14   *Grunin v. International House of Pancakes*,
513 F.2d 114 (8th Cir. 1975) ..................................................................................16
15

16   *Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ......................................................................6, 14, 15
17

*Harris v. Palm Springs Alpine Estates, Inc.*,
18   329 F.2d 909 (9th Cir. 1964) ..................................................................................12

19   *In re Mego Financial Corp. Sec. Litigation*,
20   213 F.3d 454 (9th Cir. 2000) ...................................................................................6

21   *Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*,
688 F.2d 615 (9th Cir. 1982) ....................................................................................6
22

23   *Rodriguez v. Hayes*,
591 F.3d 1105 (9th Cir. 2010) ...........................................................................14, 15

24   *Torrisi v. Tucson Elec. Power Co.*,
25   8 F.3d 1370 (9th Cir. 1993) ......................................................................................6

26   *Walters v. Reno*,
145 F.3d 1032 (9th Cir. 1998) .................................................................................15

27

28

**UNITED STATES DISTRICT COURT CASES**

*Colesberry v. Ruiz Food Products, Inc.,*
2006 WL 1875444 (E.D. Cal. June 30, 2006) ...............................................................17

*Ellis v. Naval Air Rework Facility,*
87 F.R.D. 15 (N.D. Cal. 1980) .......................................................................................6

*In re Immune Response Secs. Litigation,*
497 F. Supp. 2d 1166 (S.D. Cal. 2007) .........................................................................6

*Linney v. Cellular Alaska P'ship,*
1997 WL 450064 (N.D. Cal. July 18, 1997) ...............................................................6, 9

*Montgomery v. Beneficial Consumer Disc. Co.,*
2005 WL 497776 (E.D. Pa. Mar. 2, 2005).....................................................................17

*Palamara v. Kings Family Restaurants*
2008 WL 1818453 (W.D. Pa. April 22, 2008) .........................................................10, 18

*Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.,*
323 F.Supp. 364 (E.D. Pa. 1970) ..................................................................................16

*Schramm v. JPMorgan Chase Bank, N.A.,*
2011 WL 5034663 (C.D. Cal. Oct. 19, 2011) ...............................................................12

**STATE COURT CASES**

*7-Eleven Owners for Fair Franchising v. Southland Corporation,*
85 Cal.App.4th 1135 (2000) ...........................................................................................9

*Bowles v. Superior Court,*
44 Cal.2d 574 (1955) .....................................................................................................13

*Dunk v. Ford Motor Company*
48 Cal. App.4th 1794 (1996) .............................................................................6, 10, 17

*Florez v. Linens 'N Things, Inc.,*
108 Cal.App.4th 447 (2003) ............................................................................................8

*Party City Corp. v. Superior Court,*
169 Cal.App.4th 497 (2008) ..........................................................................................11

*People v. Dollar Rent-A-Car Sys., Inc.*
211 Cal. App. 3d 119 (1989) .........................................................................................11

*Pineda v. Williams-Sonoma Stores, Inc.*,
51 Cal. 4th 524 (2011) ................................................................................................9

*Rose v. City of Hayward*,
126 Cal.App.3d 926 (1981) .......................................................................................13

*Wershba v. Apple Computer, Inc.*,
91 Cal. App. 4th 224 (2001) .....................................................................................16

*Young v. Bank of America*,
141 Cal.App.3d 108 (1983)). ......................................................................................8

**STATUTES AND FEDERAL RULES**

Cal. Civ. Code § 1747.08 ....................................................................................... *passim*

Cal. Civ. Code § 382 .............................................................................................. *passim*

Fed. R. Civ. P. 23 ................................................................................................... *passim*

**MISCELLANEOUS**

Off. of Sen. Floor Analyses, 3d Reading Analysis of Assem. Bill No. 1316
(1995-1996 Reg. Sess.) July 18, 1995 .......................................................................8

Assem. Floor Analysis, 3d Reading of Assem. Bill No. 2533
(1995-1996 Reg. Sess.) May 15, 1996 .......................................................................8

Dept. Consumer Affairs, Analysis of Assem. Bill No. 1316
(1995-1996 Reg. Sess.) ...............................................................................................8

*Manual for Complex Litigation*
(4th ed. 2004) ...........................................................................................................20

Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS
(4th ed. 2001). ..........................................................................................................12

**I.    NOTICE OF MOTION**

Plaintiff Jordan Lamb ("Plaintiff") and Defendant Bitech, Inc., d/b/a Performance Bicycle Shop ("Performance") have entered into a Settlement Agreement in the above-referenced matter. (A true and correct copy of the executed Settlement Agreement is attached as Exhibit 1 to the Declaration of Joseph Siprut ("Siprut Decl."), which is attached hereto as Exhibit A.) Accordingly, Plaintiff moves the Court for an Order: (1) preliminarily approving the Settlement Agreement as fair, reasonable, and adequate; (2) preliminarily approving the form, manner, and content of the Detailed Notice, Summary Notice, and Claim Form; (3) setting the date and time of the Fairness Hearing for 120 days after the entry of the Preliminary Approval Order; (4) provisionally certifying the Class under Federal Rule of Civil Procedure 23 for settlement purposes only; (5) provisionally appointing Plaintiff as the Class representative for settlement purposes; and (6) provisionally appointing the law firm of Siprut PC as Class Counsel for settlement purposes. This Motion has been noticed for hearing on June 11, 2013 at 9:00 a.m. in Courtroom E of the San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102.

**II.    INTRODUCTION**

This action arises out of Plaintiff's allegations that Performance has violated California Civil Code section 1747.08 by requesting and recording personal identification information — specifically, ZIP codes — from its credit card customers in its California retail stores operated under the trade name Performance Bicycle Shop. Performance disputes and denies that it has violated Civil Code section 1747.08, or any other statutes or laws.

Although both sides believe their respective positions in the action are meritorious, they have concluded that, due to the uncertainties and expense of protracted litigation, it is in the best

interest of Plaintiff, the putative settlement Class, and Performance to resolve this action on the terms provided in the proposed Settlement Agreement attached hereto.

## III.   PROCEDURAL HISTORY

On October 17, 2011, Plaintiff filed a complaint in the Superior Court of California, County of San Francisco, entitled *Jordan Lamb v. Bitech, Inc. d/b/a Performance Bicycle Shop, Inc.*, Case Number CGC-11-515148 (the "Action"). Plaintiff asserted one claim for relief, alleging that Performance violated the Song-Beverly Credit Card Act of 1971 (California Civil Code section 1747.08) by requesting and recording personal identification information in the form of ZIP Codes from customers using a credit card. On November 17, 2011, Performance filed its Answer to the Complaint in which Performance denied Plaintiff's claims and asserted a variety of affirmative defenses.  On the same day, Performance timely removed the Complaint to the U.S. District Court for the Northern District of California (the "Court"), case number 3:11-cv-05583-EDL, where the case is now pending (the "Action").

Thereafter, the parties conducted investigation and discovery related to the merits of their respective claims and defenses and relative to class certification, which included but was not limited to preparing and serving initial disclosures pursuant to Rule 26(a) of the Federal Rules of Civil Procedure, and propounding and responding to interrogatories, document requests, and requests for admission. (Siprut Decl., ¶ 4.) On May 22, 2012, Lamb and Performance participated in mediation with Gilda M. Turitz, Esq., of Sideman & Bancroft LLP, in San Francisco, who was assigned to mediate the matter as part of the Court's mediation program. During the mediation the parties reached an agreement to settle this matter on a class-wide basis, which is formalized in the attached Settlement Agreement. (Siprut Decl., ¶ 5.)

## IV.   THE PROPOSED SETTLEMENT

The proposed settlement provides the following:

### A.  Certification of the Proposed Settlement Class

The parties agree that the Class should be defined as:

> All natural persons who, during a credit card purchase transaction persons who, between October 17, 2010 and the date of entry of the Preliminary Approval Order, in a Performance Bicycle Shop physically located in California, were requested or required to provide PII to Performance, which PII was recorded by Performance during the transaction, but excluding officers, agents or employees of Performance, any parent, subsidiary or affiliate of Performance, any entity in which Performance has a controlling interest, and the legal representatives, successors, or assigns of any such excluded persons or entities.  (hereinafter referred to as the "Class").

### B.  Merchandise Vouchers

Each Class Member will have an opportunity to receive a Merchandise Voucher for $10.00 off any purchase of any amount (hereafter a "Voucher" or "Vouchers"). The Vouchers enable Class Members to receive a monetary benefit under this settlement without having to spend *any* money out-of-pocket. Each Class Member is entitled to receive one (1) single-use Voucher regardless of the number of alleged violations. The Vouchers are valid for six (6) months after issuance.

### C.  Performance's Compliance with California Civil Code section 1747.08 and Notice to Customers.

As a condition of this Agreement, Performance agreed that it will not request and record Personal Identification Information, including but not limited to zip codes, of California store customers who pay for merchandise using a credit card in a manner prohibited by the statute. Moreover, as a condition of settlement, Performance has agreed to post a sign visible from each point-of-sale terminal in its California stores informing customers that the provision of PII is

strictly voluntary. This will ensure consumers understand that they do not have to provide any PII in order to use their credit cards.

**D.  Class Notice**

Subject to the Court granting Preliminary Approval of the Class Settlement and Provisional Class Certification, Performance and its retained Claims Administrator will provide the Class with notice of the proposed settlement by the following methods.

- **Detailed Notice.** Starting no later than thirty (30) calendar days after entry of the Preliminary Approval Order, Performance will e-mail the Detailed Notice to all Class Members for whom Performance has an email address.  For those Class Members whose e-mail address Performance does not have, and for those Class Members whose e-mail addresses do not work, Performance will send the Detailed Notice via U.S. Mail.

- **Summary Notice**. Starting no later than thirty (30) calendar days after entry of the Preliminary Approval Order, Performance will post in California Performance Stores the Store Notice in a place that is visible to consumers for thirty (30) consecutive calendar days. The Store Notice will provide the web address of the Settlement Website and a mailing address to contact the Claims Administrator.

- **Summary Class Notice to Direct Notice Settlement Class Members**. The Starting no later than thirty (30) calendar days after entry of the Preliminary Approval Order,  the Settlement Administrator shall, by email or First Class mail (for whom Performance maintains a valid postal address but not a valid email address), distribute the Summary Class Notice to Direct Notice Settlement Class Members to each Direct Notice Class Member.  Each such notice shall include an identifier unique to that Settlement Class member.  Notices to Direct Notice Class Members also shall include a link to the Settlement Website on which the Detailed Notice will be

available and which shall instruct the Settlement Class member to check back for information on the date of Final Judicial Approval, at which time the Direct Notice Class Member may use his or her unique identifier code to download and print a Credit Certificate for use as provided in this Agreement.

- **Settlement Website**. Starting no later than thirty (30) calendar days after entry of the Preliminary Approval Order, the Claims Administrator will set up an Internet website and post the Full Notice and Claim Form. The website will be active for a period of six (6) months after the Final Approval Order is entered. The website shall be designed and constructed to accept electronic Claim Form submission.

### E.  Incentive Award to Class Representative

Subject to Court approval, Plaintiff will request an incentive award in recognition of his contributions to the Class, the time he spent personally and directly in this litigation, and the risk he incurred in commencing the action, both financial and otherwise. The Court does <u>not</u> need to decide at this juncture whether and in what amount to approve Plaintiff's request for an incentive award. If this Court grants preliminary approval to the settlement, Plaintiff will separately file a motion in support of this request.

### F.  Attorneys' Fees and Costs

Despite their best efforts, to date, the Parties have been unable to reach agreement on attorneys' fees and expenses. The Court does <u>not</u> need to decide at this juncture whether to approve Plaintiff's request for attorneys' fees and costs. If this Court grants preliminary approval to the settlement, Plaintiff will separately file a motion supporting the Fee request. Importantly, the Attorneys' Fees and Expenses will not be paid out of the Settlement Class benefits achieved by the Settlement, and will not dilute or reduce the Class benefits in *any* way. Rather, Fees and

1   Expenses will be paid directly by Performance, in addition to and separate from the Settlement

2   Class benefits.

3   **V.     THE PROPOSED SETTLEMENT IS FAIR AND SHOULD RECEIVE PRELIMINARY APPROVAL.**

4

5   **A. The Proposed Settlement Meets All Criteria Establishing Fairness.**

6   Before granting preliminary approval, the court must determine the settlement is fair,

7   adequate, and reasonable. *Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1801 (1996) (citing

8   Fed. R. Civ. P. 23). As explained by the court in *In re Immune Response Secs. Litigation*, 497 F.

9   Supp. 2d 1166, at 1169-1170 (S.D. Cal. 2007):

10
> "'Although Rule 23(e) is silent respecting the standard by which a proposed
11  settlement is to be evaluated, the universally applied standard is whether the
    settlement is fundamentally fair, adequate and reasonable.' *Officers for Justice v.*
12  *Civil Serv. Comm'n of City & County of San Francisco*, 688 F.2d 615, 625 (9th
    Cir. 1982); see also *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th
13  Cir. 1993). When determining whether approval of a settlement is warranted,
    courts consider 'several factors which may include, among others, some or all of
14  the following: [1] the strength of plaintiffs' case; [2] the risk, expense,
    complexity, and likely duration of further litigation; [3] the risk of maintaining
15  class action status throughout the trial; [4] the amount offered in settlement; [5]
    the extent of discovery completed, and the stage of the proceedings; [6] the
16  experience and views of counsel; [7] the presence of a governmental participant;
    and [8] the reaction of the class members to the proposed settlement.' *Torrisi*, 8
17  F.3d at 1375; see also *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.
    1998). Further, '[t]o survive appellate review, the district court must show it has
18  explored comprehensively all [fairness] factors.' *Hanlon*, 150 F.3d at 1026 (citing
    *Protective Comm. For Independent Stockholders of TMT Trailer Ferry, Inc. v.*
19  *Anderson*, 390 U.S. 414, 434, 88 S. Ct. 1157, 20 L. Ed. 2d 1 (1968)). Finally, 'the
    settlement may not be the product of collusion among the negotiating Parties.' *[In*
20  *re] Mego Financial Corp. Sec. Litigation*, 213 F.3d [454] at 458 [(9 Cir. 2000)]
    (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992))."
21

22  Generally, "the fact that the settlement agreement was reached in arm's length

23  negotiations after relevant discovery [has] taken place create[s] a presumption that the agreement

24  is fair." *Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997),

25  aff'd, 151 F.3d 1234 (9th Cir. 1998) (citing *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18

26

27

28

(N.D. Cal. 1980), aff'd, 661 F.2d 939 (9th Cir. 1981)). In this context "[i]t cannot be overemphasized that neither the trial court in approving the settlement nor [an appellate court] in reviewing that approval have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute. It is well settled that in the judicial consideration of proposed settlements, 'the [trial] judge does not tryout or attempt to decide the merits of the controversy,' [citation] and the appellate court 'need not and should not reach any dispositive conclusions on the admittedly unsettled legal issue.'" *City of Detroit v. Grinnell Corporation,* 495 F.2d 448, at p. 456 (2d Cir. 1974).

## 1. Strength of the Case

Plaintiff asserts that Performance violated California Civil Code Section 1747.08 by requesting and recorded its customers' personally identification information, specifically their ZIP codes, in the course of completing credit card transactions. Section 1747.08 states in relevant part:

> "(a) Except as provided in subdivision (c), no person, firm, partnership, association, or corporation which accepts credit cards for the transaction of business shall do either of the following:
> . . . .
>
> (2) Request, or require as a condition to accepting the credit card as payment in full or in part for goods or services] the cardholder to provide personal identification information,[1] which the person, firm, partnership, association, or corporation accepting the credit card writes, causes to be written, or otherwise records upon the credit card transaction form or otherwise."

Cal. Civ. Code § 1747.08(a)(2).

Civil Code section 1747.08 is part of the Song-Berverly Credit Card Act, and was designed to promote consumer protection. The Act imposes fair business practices for the

---

[1] As defined by the statute, "personal identification information" means information concerning the cardholder, other than information set forth on the credit card, and including, but not limited to, the cardholder's address and telephone number. Cal. Civ. Code § 1747.08(b).

protection of consumers. *Florez v. Linens 'N Things, Inc.*, 108 Cal.App.4th 447, 450 (2003) (citing *Young v. Bank of America*, 141 Cal.App.3d 108 (1983)). Plaintiff contends Section 1747.08 was originally enacted as a response to two principal privacy concerns: first, that with increased use of computer technology, very specific and personal information about a consumer's spending habits was being made available to anyone willing to pay for it; and second, that acts of harassment and violence were being committed by store clerks who obtained customers' personal information. *Id.* at 452. *See also* Off. of Sen. Floor Analyses, 3d Reading Analysis of Assem. Bill No. 1316 (1995-1996 Reg. Sess.) July 18, 1995, p. 3.

Additionally, Plaintiff contends the statute was intended to keep the customer's credit card number separated from his or her personal information such as address, telephone number, birth date, *etc.,* in order to prevent thieves from obtaining both at the same time (*i.e.* by "dumpster diving") and engaging in credit card fraud, usually over the telephone. Assem. Floor Analysis, 3d Reading of Assem. Bill No. 2533 (1995-1996 Reg. Sess.) May 15, 1996, pp. 1-2. When drafting 1747.08, the Legislature was well aware that anyone with access to a consumer's credit card number and address could access their credit history, open credit in their name, or charge something in their name. Dept. Consumer Affairs, Analysis of Assem. Bill No. 1316 (1995-1996 Reg. Sess.) p. l.

Pursuant to California Civil Code section 1747.08(e), a violator of the statute shall be liable for a civil penalty of up to $250.00 for the first violation and up to $1,000.00 for each subsequent violation of the statute. Cal. Civ. Code § 1747.08(e). The statute "does not mandate fixed penalties; rather, it sets *maximum* penalties. . . . Presumably this could span between a penny (or even the proverbial peppercorn we all encountered in law school) to the maximum

1  amounts authorized by the statute." *Pineda v. Williams-Sonoma Stores, Inc.*, 51 Cal. 4th 524, 536

2  (2011) (internal citation and quotation marks omitted).

3        Performance denies liability and claims that class certification would be difficult for

4  Plaintiff as it argues that Plaintiff will not be able to demonstrate the requirements for

5  certification. Performance also contends that even if its actions did violate California Civil Code

6  Section 1747.08, penalties cannot be awarded because such violations were merely "technical,"

7  due to the statute's bona fide error defense. Clearly, one of the factors to be considered as to the

8  fairness of a class action settlement is the Performance's willingness to mount just such a

9  vigorous defense.

10       Notwithstanding, "the merits of the underlying class claims are not a basis for upsetting

11 the settlement of a class action; the *operative word is 'settlement.'" 7-Eleven Owners for Fair

12 *Franchising v. Southland Corporation,* 85 Cal.App.4th 1135, 1150 (2000) (emphasis added).

13 Even "[t]he fact that a proposed settlement may only amount to a fraction of the potential

14 recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and

15 should be disapproved." *City of Detroit,* 495 F.2d at 455. Courts have aptly held that "it is the

16 very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that

17 induce consensual settlements. The proposed settlement is not to be judged against a hypothetical

18 or speculative measure of what might have been achieved by the negotiators." *Linney,* 1997 WL

19 450064, at *5 (emphasis omitted).

20     **2. Risk, Expense & Complexity of Case**

21       Due to the nature of Plaintiff's case, trial will require an examination of Performance's

22 policies, procedures, and practices, as well as an examination of a number of Performance's

23 current and former employees to determine and prove precisely what happened. In addition, as

set forth above, there are numerous exceptions to California Civil Code § 1747.08 which Performance asserts are applicable. The uncertainty as to whether these exceptions apply in this case creates substantial risk for both sides, and are issues that will be expensive and time consuming to litigate through trial and appeals.

### 3.  Extent of Discovery

By virtue of formal discovery, Plaintiff believes he possesses the evidence needed to establish his *prima facie* case and defeat Performance's defenses. In response to Plaintiff's discovery requests, Performance has provided Plaintiff with information relating to the approximate total number of customers whose ZIP codes were collected by persons paying with a credit card in Performance California locations. Performance has also provided an explanation of its retail practices relevant to credit card transactions. Plaintiff has also responded to Performance's robust discovery requests. As such, counsel for each party has sufficient information to assess the strengths, weaknesses, and likely expense of taking this case to trial.

### 4.  Amount of Recovery

Under California law, a presumption of fairness exists where: (1) the settlement is reached through arm's length negotiation; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small. *Dunk*, 48 Cal.App.4th 1794. Given the strength of Plaintiff's case, the risk, expense, complexity and duration of further litigation, the proposed settlement is fair.

The settlement allows Class Members to request Vouchers with an actual value of $10.00 without the need to spend any out of pocket money. *See Palamara v. Kings Family Restaurants*, 2008 WL 1818453 at *1 (W.D. Pa. April 22, 2008) (approving class settlement concerning alleged Fair and Accurate Credit Transaction Act violations where defendant agreed to provide

vouchers giving consumers options for free appetizers, soup, desserts and other small menu items when visiting defendant's restaurants in future). The Vouchers do not expire for six months. Further, the $10.00 Voucher allows class members to choose from a significant amount of merchandise at Performance stores, as Performance stores offer numerous items at $10 or less (such as water bottles, cycling socks, nutritional items, handlebar grips, and cycling spikes). Thus, Class Members will receive a tangible benefit from the proposed relief.

Lastly, Performance contends that this action does not involve monetary, physical, or property damage to Plaintiff or putative Class Members and that, consequently, it contends that it is unlikely that even a nominal penalty would be imposed in this case. *See, e.g., People v. Dollar Rent-A-Car Sys., Inc.* 211 Cal. App. 3d 119, 132 (1989) (upholding civil penalties of $100,000 where evidence showed "well over 500,000 misleading and deceptive contracts," which amounted to a penalty of *less than 20¢* per contract, even though the statutory scheme provided for a penalty up to "a total penalty of $5,000 for each unlawful act"). Performance also contends that less than a nominal penalty is supported by the fact that the class period covers the time period between when the California Supreme Court ruled in *Pineda* that Zip codes constituted Personal Identification Information under Civil Code section 1747.08(b) and the California Court of Appeal held that they were not in *Party City Corp. v. Superior Court*, 169 Cal.App.4th 497 (2008). In light of this contention, the value of the relief obtained by Plaintiff is significant.

**5.  Experience of Counsel**

Counsel for Plaintiff in this action is highly experienced in consumer class actions. In particular, Siprut PC and the firm's attorneys have represented hundreds of thousands of consumers in numerous consumer class actions asserting violations of California's consumer protection statutes, including the Song-Beverly Credit Card Act of 1971. *See* Siprut Decl., ¶ 10.

In short, Plaintiff's Counsel is well qualified to conduct the proposed litigation and to assess its settlement value. Based on that experience, Counsel believes that the proposed settlement is one that is fair and adequate to members of the Class.

### 6. Presence of Governmental Participants

Although there is no governmental entity participating in this matter as of this time, full and complete notice is being provided to all appropriate state and federal authorities. Performance will provide such notice which will include all appropriate information and documents required by CAFA. *See* 28 U.S.C. § 1715(b).

## V. THE PROVISIONAL SETTLEMENT CLASS SHOULD BE CERTIFIED; THE FORM AND METHOD OF NOTICE TO THE CLASS MEMBERS SHOULD BE APPROVED; AND, A HEARING REGARDING FINAL APPROVAL OF THE SETTLEMENT SHOULD BE SCHEDULED.

### A. The Provisional Settlement Class Should be Certified

As shown below, the Class satisfies each of Rule 23(a)'s prerequisites and the requirements for certification under Rules 23(b)(3).

### 1. Numerosity — Federal Rule of Civil Procedure 23(a).

To satisfy the numerosity requirement there is no specific number required, nor is a plaintiff required to state the exact number of potential class members. *See Schramm v. JPMorgan Chase Bank, N.A.*, 2011 WL 5034663, *3 (C.D. Cal. Oct. 19, 2011) quoting *Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 913–914 (9th Cir. 1964) ("[I]mpracticability does not mean impossibility, but only the difficulty or inconvenience of joining all members of the class." (internal quotations omitted); see also 3 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 7.20, 66 (4th ed. 2001).

In this case, at least 28,000 individuals were affected by Performance's alleged unlawful practice of requesting and recording private consumer information in violation of the Song-

1    Beverly Act. Accordingly, the Class satisfies the numerosity requirement. *Bowles v. Superior*

2    *Court,* 44 Cal. 2d 574 (1955) (class with 10 members sufficiently numerous); *Rose v. City of*

3    *Hayward,* 126 Cal.App.3d 926, 934 (1981) (class of 48 members satisfies numerosity

4    requirement).

5              **2.    Commonality/Predominance — Federal Rule of Civil Procedure 23(a)(2) and**

6                      **23(b)(3).**

7              The commonality element requires that "there are questions of law or fact common to the

8    class." Fed. R. Civ. P. 23(a)(2). Courts recognize that there may be factual differences between

9    class members but the existence of such variations will not necessarily defeat the class aspect of

10   the action. *Parra v. Bashas, Inc*., 536 F.3d 975, 978 (9th Cir. 2008). "Where the circumstances

11   of each particular class member vary but retain a common core of factual or legal issues with the

12   rest of the class, commonality exists." *Id.* at 978-79. As alleged in Plaintiff's Complaint, all

13   members of the Class share common questions of fact that predominate over issues affecting

14   only individual members. Those common factual issues for the Class include (1) whether each

15   Class member engaged in a credit card transaction with Performance; (2) whether Performance

16   required Class members to provide personal identification information during such credit card

17   transactions; and (3) whether Performance recorded Class members' personal identification

18   information in its databases.

19

20             Those common factual questions lead to a legal question common to all members of the

21   Class — whether Performance's conduct and practice of requiring and recording such personal

22   identification information during credit card transactions constitutes a violation of California

23   Civil Code section 1747.08; and the proper measure of civil penalties. Accordingly, the

24   commonality requirement is met. Rule 23(b)(3) provides that a class action may be maintained

25   where the questions of law and fact common to members of the proposed class predominate over

26

27

28

any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3); *In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 268 F.R.D. 652, 662 (S.D. Cal. 2010). In this case, common questions predominate for the Class because Performance's unlawful conduct is *identical* with regard to all putative Class members. Thus, the predominance requirement is satisfied because liability would have been decided predominantly, if not entirely, based on common evidence of Performance's conduct.

### 3.  Typicality — Federal Rule of Civil Procedure 23(a)(3).

Rule 23 also requires that Plaintiff's claims be typical of those of the Class. Fed. R. Civ. P. 23(a)(3). "The typicality requirement looks to whether the claims of the class representatives [are] typical of those of the class, and [is] satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes,* 591 F.3d 1105, 1124 (9th Cir. 2010). To be typical, representative claims "need not be substantially identical." *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 164 (C.D. Cal. 2002) (citing *Hanlon,* 150 F.3d at 1020).

In this case, Plaintiff and the Class members were all customers of Performance, and have alleged that Performance's corporate policy of requesting and storing their personally identifiable information as a prerequisite to credit card transactions violates the Song-Beverly Act proscriptions, thereby entitling them to statutory penalties. Accordingly, Plaintiff's claims are typical of those of the Class.

### 4.  Adequacy of Representation — Federal Rule of Civil Procedure 23(a)(4).

The final Rule 23(a) prerequisite requires that a proposed class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two

questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon,* 150 F.3d at 1020. Put another way, the proposed class representative must not have claims that are antagonistic or conflicting with other members of the class and must share an interest in the outcome of the case with other class members. *Rodriguez*, 591 F.3d at 1125. Furthermore, proposed class counsel must be competent — a requirement that relies on counsel's qualifications. *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998).

In this case, Plaintiff has the same interests as the Class — obtaining relief from Performance for the unlawful request and retention of his personally identifiable information and personal video programming viewing history, and ensuring that Performance does not continue such conduct in the future. Plaintiff has no interests antagonistic to the interests of the proposed Class. Moreover, Plaintiff's counsel are well respected members of the legal community, have regularly engaged in major complex litigation, and have had extensive experience in consumer class actions involving similar issues and that were of similar size, scope and complexity as the present case. Accordingly, both Plaintiff and his counsel adequately represent the Class.

### 5. Superiority — Federal Rule of Civil Procedure 23(b)(3).

In addition to satisfying Rule 23(a), a plaintiff seeking certification must satisfy one of the provisions of Rule 23(b). Rule 23(b)(3) also requires a showing that "a class action is superior to the available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3); *Hanlon*, 150 F.3d at 1022. Rule 23(b)(3) provides that matters pertinent to a finding of superiority include: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any

litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3).

The present class action is superior to other available methods for the fair and efficient adjudication of Plaintiff and the Class' claims. The burden and expense of individual prosecution of the litigation necessitated by Performance's actions makes a class action superior to other available methods of resolution. Thus, absent a class action, it would be difficult, if not impossible, for the individual members of the Class to obtain effective relief.

**B.  The Form & Method of Service of Class Notice Should Be Approved.**

The trial court has broad discretion in approving class notice. *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 252 (2001). "When the parties reach a settlement agreement before a class determination and seek to stipulate that the settlement will have class wide scope, a class notice must be sent to provide absent class members with certain basic information so that they have an opportunity to consider the terms of the settlement." 2 NEWBERG, section 11.30, p. 11-62-11-63. "[T]he contents of a settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.'" *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.,* 323 F.Supp. 364, 378 (E.D. Pa. 1970), *aff'd sub nom.*, *Ace Heating & Plumbing Co. v. Crane Co.,* 453 F.2d 30 (3d Cir. 1971); *Grunin v. International House of Pancakes,* 513 F.2d 114, 122 (8th Cir. 1975), *cert den.* 423 U.S. 864 (1975).

The proposed Class notice meets these standards. As demonstrated below, the proposed written notice goes well beyond the requirements set forth above. *See* Exhibits A-E to Exhibit 1 attached to the Declaration of Joseph J. Siprut. In fact, the notice provisions provide:

1. A brief summary of the claims alleged in the action;

2. An explanation of the proposed terms of the settlement and the amount the Class Members are entitled to receive under the agreement, and the method by which to elect the benefit;

3. An explanation of the Class Members' rights to opt-out of and/or object to settlement within given time-frames;

4. An explanation that the Class Members who do not opt-out will be bound by the proposed settlement and judgment and will have released their claims;

5. An explanation that the Class Members who do not opt-out will be represented by counsel for the named Plaintiff; and

6. An identification of Class Counsel and a means for making inquiries thereof.

Federal and California courts authorize service of class notice by a variety of reliable means. In this regard, "[t]here is no statutory or due process requirement that all class members receive actual notice by mail or other means; rather, 'individual notice must be provided to those Class members who are identifiable through reasonable effort.'" *Eisen v. Carlisle* & *Jacquelin*, 417 U.S. 156,175-76 (1974). When deciding whether to preliminarily approve a class action settlement, "[t]he trial court has broad discretion to determine whether the settlement is fair." *Dunk*, 48 Cal. App. 4th at 1801; *see also Colesberry v. Ruiz Food Products, Inc.,* 2006 WL 1875444, at *7 (E.D. Cal. June 30, 2006) (citing *Franks v. Kroger Co.,* 649 F.2d 1216, 1222-23 (6th Cir. 1981)); and *Montgomery v. Beneficial Consumer Disc. Co.*, 2005 WL 497776, at * 6

(E.D. Pa. Mar. 2, 2005) ("[d]ue process does not require actual notice, but rather a good faith effort to provide actual notice.").

In this case, the proposed settlement provides for direct notice by e-mail or first class U.S. Mail, and indirect notice by posting legal notice summarizing the proposed settlement terms in each California Performance store and on the Settlement Website. Moreover, if any email notices are bounced back, the Settlement Administrator will send the notice via first class U.S. mail to those individuals whose emails rejected the notice. The proposed methods of notice are reasonably calculated to reach the class members by the best means practicable and should be approved.

### C.  The Settlement is In Line with Other Class Action Settlements.

That the Settlement relief is more than adequate is supported by the fact that the relief Performance has agreed to provide either meets or exceeds the consideration offered by defendants in other recent class action settlements.

Here, settlement class members can elect to receive a $10 off voucher that can be used to purchase various products in full. There are items valued under $10 in Performance stores that a class member may purchase outright. (Siprut Decl., ¶6.) Vouchers redeemable for free products and services have been upheld by many courts, including this one. *See, e.g.*, *Simon v. Toshiba Am.*, 2010 WL 1757956, at *3 (N.D. Cal. Apr. 30, 2010) (approving settlement that provided class members option to receive computer parts or $35 to spend on items available on defendant's website); *Shames v. Hertz Corp.*, 2012 WL 5392159, *3 (S.D. Cal. Nov. 5, 2012) (approving settlement voucher worth one or two days of a rental car); *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 255-56 (approving gift cards that can be used "for literally thousands of products") (E.D. Pa. 2011); *Palamara v. Kings Family Restaurants*, 2008 WL

1818453, at *1 (W.D. Pa. Apr. 22, 2008) (approving settlement vouchers worth free food, such as a free appetizer or cup of soup); *accord Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 53-54 (2008) (approving settlement providing free video rentals to the class).

Moreover, this Settlement is demonstrably on par with other class action settlements involving similar violations of Section 1747.08. For example, the Superior Court for the County of San Diego approved a settlement providing claimants with a $5 merchandise card. (Siprut Decl., Exs. 2-3.) Similarly, the Superior Court for the County of San Diego approved another settlement providing claimants with $10 off merchandise certificates that were valid for six months. (*Id.*, Exs. 4-5.) In May 2012, the Superior Court for the County of Orange approved a settlement providing claimants with a merchandise certificate worth $20 for merchandise purchases up to and including $200 or $50 for merchandise purchases over $200. (*Id.*, Exs. 6-7.) Also in May 2012, the Honorable Marilyn L. Huff of the Southern District of California approved a settlement providing claimants with vouchers redeemable for either (1) three free letters of machine engraving or (2) $10 off any merchandise purchase. (*Id.*, at Exs. 8-9.) All of these awards are in line with the proposed award here where claimants may obtain a voucher valued at $10.

### D. The agreement to comply with Section 1747.08 and notification of ability to opt-out hold value.

Further adding value to the Settlement, Performance agreed to a change in practice. Performance agreed to comply with Section 1747.08. (Ex. A.1, § 7.1.) Additionally, Performance agreed to post a sign visible from each point-of-sale terminal in its California stores informing customers that collecting and recording PII in conjunction with Credit Card Purchase Transactions is voluntary, and that they need not furnish this information. (*Id.* at § 7.2.) This action does not involve monetary, physical, or property damage to Plaintiff or putative class

members. It involves the purported infringement of a legal right and the recovery of a civil penalty. As such, Performance's agreement to provide all California customers notice of their ability to refuse requests by Performance for their PII is significant. This is particularly so because Section 1747.08 does not permit private parties to obtain injunctive relief, and Plaintiff could not have obtained such relief through a trial. *Shabaz v. Polo Ralph Lauren Corp.*, 586 F. Supp. 2d 1205, 1210 (C.D. Cal. 2008) (dismissing claim for injunctive relief); *Korn v. Polo Ralph Lauren Corp.*, 644 F. Supp. 2d 1212, 1218-19 (E.D. Cal. 2008) ("[P]laintiff is not authorized to secure [injunctive] relief under § 1747.08. . . . [P]laintiffs may sue for civil penalties while the Attorney General or other government actor may sue for both civil penalties and injunctive relief.").

### E.  Court Should Schedule A Hearing For Final Settlement Approval.

Following notice to the Class Members, a fairness hearing should be held on the proposed settlement. *Manual for Complex Litigation*, § 21.633. Accordingly, the Parties request that the Court schedule a hearing on final approval of the settlement to be held 120 days after entry of the Preliminary Approval Order. The hearing on the final settlement approval should be scheduled now so that the date can be disclosed in the class notice.

## VI.   CONCLUSION

Based upon the foregoing, and because the proposed settlement is fair, reasonable, and advantageous to the proposed Class Members, Plaintiff respectfully requests that the Court enter an Order:

A.  Preliminarily approving this Agreement as being fair, reasonable, and adequate;

B.  Preliminarily approving the Detailed Notice, Summary Notice, Claim Form, and Credit Certificate described in sections 9.2.1 and 9.2.2 of the Settlement Agreement, and attached thereto as Exhibits B - E;

C.  Setting the date and time of the Fairness Hearing to be held between 120 days after entry of the Preliminary Approval Order;

D.  Provisionally certifying the Class under Fed. R. Civ. P. 23(a) and (b)(3) for settlement purposes only;

E.  Appointing Plaintiff as the Class representative;

F.  Appointing the law firm of Siprut PC as Class Counsel;

G.  And for any further relief the Court deems just and proper.

Dated: May 9, 2013

Respectfully submitted,

JORDAN LAMB, individually and on behalf of all others similarly situated

By:  /s/ Joseph J. Siprut
    One of the Attorneys for Plaintiff
    And the Proposed Putative Class

Joseph J. Siprut (Admitted *Pro Hac Vice*)
*jsiprut@siprut.com*
Aleksandra M. S. Vold (Admitted *Pro Hac Vice*)
*avold@siprut.com*
**SIPRUT PC**
17 North State Street, Suite 1600
Chicago, Illinois 60602
312.236.0000
Fax: 312.948.9196

Todd C. Atkins (SBN 208879)
*tatkins@siprut.com*
**SIPRUT PC**
701 B Street, Suite 1400
San Diego, California 92101
Tel: 619.255.2380
Fax: 619.231.4984

4814-5989-3522, v. 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **Plaintiff's Unopposed Motion For Preliminary Approval Of Class Action Settlement** was filed this 9th day of May, 2013, via the electronic filing system of the Northern District of California, which will automatically serve all counsel of record.

                    s/  Joseph J. Siprut